# Richmond.

## PANNILL V. COLES.

### JANUARY 21st, 1886.

1. COURT OF APPEALS—*Jurisdiction— Unlawful entry and detainer.*— State Constitution, Article VI., section two, gives this court appellate jurisdiction in controversies concerning the title or boundaries of land, whatever the amount and whatever the *element* of title involved in the controversy ; and, consequently, such jurisdiction extends to cases of unlawful entry and detainer.

2. TRUST DEEDS—*Construction.*—Where property is conveyed to trustee to hold same and its issues for the separate use of a married woman, as though she were a *feme sole*, and to the use of her issue, her husband has no control over the property, and cannot lease or otherwise dispose of it, without the consent of the trustee.

Error to judgment of circuit court of Pittsylvania county, rendered May 4, 1885, affirming a judgment of the county court of said county, rendered October 28, 1884, in an action of unlawful entry and detainer, wherein Isaac Coles, trustee for Mrs. Matoaka Sims, wife of William E. Sims, was plaintiff, and David H. Pannill was defendant.

James M. Whittle had conveyed a house and lot at Chatham to Coles, trustee, for the sole use of Mrs. Sims. Her husband, as his wife's agent, rented the property to Pannill. Before the term had ended, Coles, trustee, at the instance of the grantor, instituted this action. A jury being waived, the county court adjudged against Pannill, who obtained a writ of error and *supersedeas* from one of the judges of this court.

The opinion states the case.

*R. G. H. Kean,* for the plaintiff in error.

*I. H. Carrington,* for the defendant in error.

LACY, J., delivered the opinion of the court.

On the 9th of September, 1884, the defendant in error brought his action of unlawful entry and detainer against the plaintiff in error, for a house and lot at Chatham, in said county.

The property in question was, together with other property, conveyed by James M. Whittle to Isaac Coles, trustee, by deed dated January 22, 1879, upon the following trusts: That the trustee and his heirs shall hold *all the property granted* in the said deed, its issues and profits and increase, to the sole and separate use of Matoaka Sims, daughter of the grantor, and wife of William E. Sims, as though she were a *feme sole,* and to the use and benefit of such issue as the said Matoaka now has or may hereafter have. In the event of the death of the said husband or wife, the other surviving, the said property, its issue and profits and increase, are to be held for the joint maintenance and support of said survivor and of the children of said husband and wife as may be then living, and of the issue of any child who may have died leaving issue; and in trust, that on the death of said husband and wife the said trustee and his heirs shall cause the property aforesaid, its issues, profits or increase, if any be then on hand, to be divided between the then living children of said husband and wife and the descendants of any child of said parents as may have died leaving issue, according to the acts of descent and distribution in cases of intestacy; and the trustee is to be held

to no personal responsibility for the issues, profits, and increase aforesaid.

On the trial a jury was waived, and the whole matter of law and fact submitted to the court, and judgment was rendered for the plaintiff. The defendant moved the court to set aside the said judgment; which motion being overruled, the court certified the following facts proved:

That the family of W. E. Sims had been in possession of the property in controversy, with the consent of the trustee, for ten years prior to the tenancy of the defendant; that said defendant rented said property from said Sims as the representative and agent of his wife and children; that said Pannill took possession of said property about the 1st of April, 1884, and is still in possession; that said Pannill has paid a part of the rent for same to W. E. Sims, who stated that it was for his wife; that Sims and wife are now living together, but not on said property; that said Pannill has never rented said property from said Coles, trustee; that this suit was brought at the instance of the grantors in said deed of trust, and not at the instance of either of said beneficiaries in said deed; that the said trustee still holds the legal title to said property; that said Pannill took possession and holds said property without the concurrence or consent of said trustee, and had not so held the same for three years before the institution of this suit; that the children of Mrs. Sims, who are beneficiaries under said deed of trust, are infants.

Upon the hearing of the writ of error, which was awarded to this judgment by the circuit court of said county, the same was affirmed. Whereupon, upon the petition of the said defendant, a writ of error was awarded by one of the judges of this court.

The question first to be disposed of in this court is upon the motion of the defendant in error to dismiss the writ of error

for want of jurisdiction in this court to try the question at issue. The grounds of this motion are that the second section of Article VI. of the constitution does not embrace a writ of unlawful detainer, unless it is affirmatively shown that the subject matter involved is of the value of $500; that possession, and not title, being involved in such suits, that they are not embraced in the said section of the constitution prescribing the jurisdiction of this court.

The language of the constitution in question is: "It (the Supreme Court of Appeals) shall not have jurisdiction in civil cases where the amount in controversy, exclusive of costs, is less in value or amount than five hundred dollars, except in controversies concerning the title or boundaries of land, the probate of a will," &c., setting forth other exceptions.

The amount or value of the controversy here is less than five hundred dollars; but it is contended that this case being a controversy concerning the possession of land, it is included within the exception provided by the constitution, and cited above, which provides for a case concerning the title to land; and that a controversy concerning the possession of land is a controversy concerning the title to land, possession being an element necessary to make up a complete title to land.

We cannot do better in construing this language in the constitution than to recur to first principles.

A title is thus defined by Sir Edward Coke: "*Titulus est justa causa possidendi id quod nostrum est,*" 1 Inst. 345; Thos. Co. Lit. 153*a*. Defined by Mr. Bouvier as the means whereby the owner of lands hath the just possession of his property, upon the authority of Mr. Blackstone. 2 Bla. Com. 195.

Mr. Blackstone says: "There are several stages or degrees requisite to prove a complete title to lands and tenements:

1st. The lowest and most imperfect degree of title consists in the mere naked possession or actual occupation of the

estate, without any apparent right or any shadow or pretence of right to hold or continue such possession. And at all events without such actual possession *no title* can be completely good. 2d. The next step to a good and perfect title is the *right of possession*, which may reside in one man while the actual possession is not in himself, but in another. 3d. The mere right of property, the *proprietatis*, without either the possession, or the right of possession, the mere right is in him, the *jus merum*, and the estate of the owner is in such cases said to be totally · divested, and put to a right. 4th. *A complete title* to lands, tenements, and hereditaments. For it is an ancient maxim of the law that no title is completely good unless the right of possession be joined with the right of property, which right is then denominated a double right, *jus duplicatum, or droit droit*. And when, to this double right the actual possession is also united, there is, according to the expression of Fleta, *juris et seisinae conjunctio, there and then only is the title completely legal*." ·

Mr. Minor, in his Institutes, volume second, 446, treating of the title to things real in general, adopts and follows this analysis of Mr. Blackstone. And Judge Lomax, in the first volume of his Digest, page 739 (edition 1855), Title XX, Title to Real Property, adopts the same, remarking, "Lord Coke has thus stated the whole of this doctrine, it is to be known that there is *jus proprietatis*, a right of ownership." *Jus possessionis*, a right of *seisin* or possession, and *jus proprietatis et possessionis*, à right both of property and possession, and this is anciently called *jus duplicatum* or *droit droit*. For example, a man may be *disseised* of an acre of land, the *disseisee* has *jus proprietatis*, the *disseisor* hath *jus possessionis*. And if the *disseisee* release to the *disseisor*, he hath *jus proprietatis et possessionis*.

Judge Tucker, in the "Commentaries of the laws of Vir-

ginia," Book second, page 183, chapter 11, "Treating of the title to things real in general," has also adopted and followed the same analysis. This question has not been directly passed upon by this court, although in the numerous cases of unlawful detainer which have been under consideration here, it might have been. It does not appear to have been raised, and the question of the value of the possession does not appear to have been ever looked to in any reported case. In some of the cases expressions have been used in which the possession seems to have been contrasted with the title. Thus, in *Allen* v. *Gibson*, 4 Randolph, 468, Judge Green says: "This proceeding involves no question of title. The only question is, whether the plaintiff is entitled to the possession as against the defendant."

The question to be determined in such case is the right of possession, and to this end the question of the complete title is not the question to be determined; and to maintain the action the plaintiff need not have the complete title. A question may not involve the complete title, and yet it may be a question concerning the title; and if any element of the complete title is involved, the case would come within the constitutional provision concerning the title or boundaries of land.

Upon an examination of the cases decided in this court, and a consideration of the accepted definition of title to be found in the elementary works, it is not difficult to interpret the language of the constitution under consideration. When the framers of that instrument used the language we have considered, they are to be taken to have used the word title in its legal sense, and *concerning title* must be held to mean concerning, relating to, any element of title. If it is concerning one element of title, it is as much concerning title as if concerning any other element of title. Controversies concerning the "*jus possessionis,*" or such as are concerning the "*jus proprieta-*

*tis,"* or such as are concerning the *"jus duplicatum or droit droit,"* or *"jus proprietatis et jus possessionis,"* are all controversies concerning title; if the word title in the constitution is to be taken to mean title in its complete signification, that is including all its elements. And as there are no words in that instrument which limit its meaning, it must clearly be taken to be used in such legal sense. It follows that jurisdiction is conferred on this court by the constitution, section 2, Article VI, to exercise appellate jurisdiction in actions of unlawful detainer; and the motion to dismiss for want of jurisdiction must be overruled.

We will now briefly consider the question raised on the merits. This question turns entirely upon the true construction of the terms of the trust deed creating the trust, and conferring the powers of the trustee. We have recited the language in full. It appears from the record that the husband and wife are both living; no question therefore arises concerning the rights of survivorship, nor any question concerning rents and profits. The question in this case is, who has the right to the *possession* of the land in controversy. The plaintiff claims it upon the ground that the deed of trust confers upon him the title to the property, and the right to hold it for specified purposes. The trust deed, as we have said, provides that the trustee and his heirs "shall hold all the property granted as aforesaid, its issues, profits and increase, to the sole and separate use of Matoaka Sims, daughter of the grantor and wife of William E. Sims, as though she were a *feme sole*, and to the use and benefit of such issue as said Matoaka now has or may hereafter have." The defendant has the possession of the property, and claims the right of possession by virtue of his having rented the same from William E. Sims, as the representative and agent of his wife and children.

By the terms of the deed the right to hold this property is in the plaintiff; he is required by the deed to hold all the property, the issues, profits, and increase for Mrs. Sims as

though she were a *feme sole* for her sole and separate use, and to the use and benefit of her children.

If Sims has any control or rights concerning this property they are not discoverable from this record; his wife being yet alive he has no rights under the deed of trust, but is excluded by express and the plainest words. However, as husband and father, he is the representative and agent of his wife and children; as to this property he is neither the one or the other, because another person is provided for that purpose by the deed as to this property. He was without authority to rent out or to otherwise dispose of the property in question, and the defendant acquired from him no right to the possession of the same; such right of possession could only be granted by the trustee.

The question whether the action of unlawful detainer can be maintained or defended by one who has the equitable title, coupled with actual possession rightfully begun, does not arise in this case. The defendant has nothing but the naked possession wrongfully begun. He has acquired nothing because his grantee could grant nothing in the premises.

The whole question on the merits turns upon the construction of the deed; there is no dispute about the facts, and the question whether this property (the beneficiaries not desiring to live upon it) can be rented out by authority of this deed by William E. Sims, without the concurrence or assent of the trustee, seems to be too plain for serious discussion. The deed does not confer the power on him, but on the trustee; and not only that, it expressly excludes his control over the subject. We think the trustee was entitled to recover in this action, and the judgment in his favor was right. It follows that the judgment of the county court complained of, and the judgment of the circuit court affirming the same, must be affirmed.

JUDGMENT AFFIRMED.